IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANCE STRADER, | ) |
| Plaintiff, | ) No. 2:19-cv-118-NR |
| v. | ) |
| U.S. BANK, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

**J. Nicholas Ranjan, United States District Judge**

On May 10, 2019, *pro se* Plaintiff Vance Strader filed this lawsuit against over a dozen Defendants. [ECF 9]. He amended his complaint on November 12, 2019, filing a 77-page complaint against the previous Defendants, as well as several others. [ECF 18]. Since then, all Defendants who have been served or waived service have filed motions to dismiss the claims against them. With the motions now fully briefed, and after careful consideration of the parties' arguments and the allegations in the operative complaint, the Court finds that Mr. Strader has failed to state a cause of action against any of the Defendants. For the reasons below, the Court will grant all Defendants' motions to dismiss and dismiss this case with prejudice.

## BACKGROUND

This is Mr. Strader's second federal lawsuit relating to the same mortgage-foreclosure proceeding. In 2017, Mr. Strader sued many of the same Defendants at Case No. 17-cv-684, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), constitutional violations, and state-law causes of action. All of his claims relate to events surrounding the foreclosure on a house located in Penn Hills owned by Mr. Strader's deceased mother. The foreclosure action was

- 1 -

initiated by the trustee for the trust that owned a mortgage issued to Mr. Strader's mother (U.S. Bank) and the mortgage loan servicer (Nationstar). Some of Mr. Strader's claims in the 2017 case have survived motions to dismiss and proceeded through discovery. That case is at the summary-judgment briefing stage.

Here, as in the 2017 case, Mr. Strader challenges events in the underlying mortgage-foreclosure proceeding. While the 2017 case centers on events from 2016, this case concerns events that occurred in the Fall of 2018, when certain Defendants obtained summary judgment in state court on the same underlying mortgage-foreclosure action. [ECF 18, ¶32].

The thrust of Mr. Strader's amended complaint is that actions taken by the various Defendants in furtherance of the mortgage-foreclosure action—including U.S. Bank, Nationstar, the law firm Defendants (as advocates for U.S. Bank and Nationstar), Judge Joseph James (as the judicial decision-maker), Allegheny County (as Judge James's "employer"), and the Allegheny County Sheriff, William Mullen, and his office (as courtroom security)—violated the FDCPA and other laws. [ECF 18, ¶¶ 32-53]. Generally, Mr. Strader alleges that Defendants were collectively out to steal his deceased mother's house: "This is a scam that is fleecing people/voters out of their houses, by debt collectors and corrupt public officials for profit." [ECF 18, ¶ 71].

Specifically, Mr. Strader complains about events that took place in the context of U.S. Bank and Nationstar's summary-judgment motion, filed in the Fall of 2018. [ECF 18, ¶ 32, ¶ 153]. On December 11, 2018, Judge James held oral argument on the motion and invited an attorney at Defendant Sandelands Eyet, LLP, to argue on behalf of U.S. Bank/Nationstar. [ECF 18, ¶¶ 37-40]. Judge James allowed evidence to be introduced, including asking Mr. Strader questions about financial matters. [ECF 18, ¶¶ 40-42]. Mr. Strader alleges that

Judge James overstepped his role and essentially tried the case for U.S. Bank/Nationstar. [ECF 18, ¶ 46].

Mr. Strader further accuses Judge James of not allowing him to make his record at the argument and of cutting him off. [ECF 18, ¶¶ 61-67]. He also complains about various evidentiary rulings and argues that Judge James should have recused himself. [ECF 18, ¶ 66, ¶¶ 94-95]. According to Mr. Strader, the result of this conduct was a denial of due process, culminating in the grant of summary judgment to U.S. Bank/Nationstar. [ECF 18, ¶¶ 43-45].

Further, Mr. Strader alleges that, during the argument, he felt intimidated by the presence of a deputy sheriff in the courtroom, as he had a gun. Mr. Strader claims that the deputy sheriff stood ready to shoot him for making arguments to the court. [ECF 18, ¶ 38, ¶¶ 50-51].

Notwithstanding the state court granting summary judgment against him, Mr. Strader continues to dispute the debt, stating that the underlying promissory note is "bogus" and that he will not pay the debt. [ECF 18, ¶ 53, ¶ 128]. Following summary judgment, the house was posted for sale. [ECF 18, ¶ 122, ¶ 149]. In March 2019, Mr. Strader's attempts to seek reconsideration and appeal in the state courts failed. [ECF 41-4].

In this lawsuit, Mr. Strader pleads the following specific causes of action against all Defendants: (1) violation of the FDCPA; (2) violation of 42 U.S.C. § 1983 and § 1985; and (3) violation of the Racketeer Influenced Corruption Organizations Act ("RICO"). He seeks, in part, $5 million in punitive and actual damages, $5 million in statutory damages, and injunctive relief in the form of stopping the sale of the house and returning it to him. [ECF 18, "Wherefore" clause].

Defendants here can be grouped into three main categories: (1) the mortgage-related Defendants (Nationstar Mortgage LLC d/b/a Mr. Cooper, Fay

Janati, and U.S. Bank); (2) the law-firm Defendants (Shapiro & DeNardo, LLC, Gerald Shapiro, David Kreisman, Katherine Wolf, Sandelands Eyet, LLP, Matthew Eyet, Alina Eyet, and William Sandelands); and (3) the state-actor Defendants (Judge Joseph James, Allegheny County, and Sheriff William Mullen and his office). Each of these groups of Defendants have filed motions to dismiss [ECF 25; ECF 29; ECF 36; ECF 40; ECF 58; ECF 63], which are now fully briefed and ready for disposition.

For the reasons that follow, none of Mr. Strader's causes of action state a proper claim against the various Defendants, and granting him leave to amend his complaint would be both inequitable and futile. Therefore, the amended complaint will be dismissed with prejudice.

## DISCUSSION & ANALYSIS

The Court applies the familiar standard of Rule 12(b)(6), and accepts all of the allegations in the amended complaint as true. After careful consideration of each and every allegation in the amended complaint, and construing all factual averments and reasonable inferences in Mr. Strader's favor, the Court finds that the amended complaint fails to state a claim, for at least the following *seven* reasons:

*First,* the amended complaint is barred, at least in part, by the *Rooker-Feldman* doctrine. That doctrine provides that federal courts lack jurisdiction to review state-court judgments where the relief sought is in the nature of appellate review. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine deprives federal courts of subject-matter jurisdiction when: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court's judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review

and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up).

Here, those elements are met because: (1) Mr. Strader lost the mortgage-foreclosure proceedings in state court; (2) he is complaining of injuries caused by the summary-judgment order; (3) that order, and the denial of his appeal, were rendered by March 2019, before this federal suit was filed; and (4) Mr. Strader is asking this Court, at least as one aspect of the relief he seeks, to reverse that summary-judgment order. Specifically, Mr. Strader is seeking injunctive relief in the form of overturning Judge James's ruling and giving Mr. Strader his mother's house back. This request falls outside of the Court's authority. *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("If the relief requested in the federal action . . . would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.") (citation and quotation omitted); *Marran v. Marran*, 376 F.3d 143, 149-50 (3d Cir. 2004). Accordingly, the amended complaint, to the extent that it seeks injunctive relief, should be dismissed pursuant to the *Rooker-Feldman* doctrine.

***Second,*** Mr. Strader's case impermissibly splits causes of action. The claim-splitting doctrine prohibits plaintiffs from "maintain[ing] two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citations omitted). "The longstanding rule against improper claim splitting prohibits a plaintiff from prosecuting his case piecemeal and requires that all claims arising out of a single alleged wrong be presented in one action." *Prewitt v. Walgreens Co.*, No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) (citations omitted). The claim-splitting doctrine in this Circuit "applies when two cases: (1) take place in the same court; (2) with the same defendants;

(3) involving the same subject matter." *McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008).

Mr. Strader's 2017 and 2019 cases are both before this Court and involve many of the same Defendants. At issue is only whether the subject matter is "the same." The Court finds that it is. The cases need not be identical to involve the same subject matter. *McKenna*, 304 F. App'x at 92. When the difference between the two cases is "purely semantic" and both cases rely on "the same operative facts and legal principles," the cases involve the same subject matter. *Id.* Mr. Strader's second lawsuit alleges the same type of FDCPA violation as before and is based upon the very same mortgage-foreclosure proceedings. Mr. Strader is impermissibly taking a second bite at the apple with his claims in this case. While the claim-splitting doctrine precludes all of the claims in this case, the most significant overlap between the 2017 and 2019 cases concerns the FDCPA claims. The FDCPA claims here are clearly duplicative of the ones in the 2017 case; Mr. Strader cannot effectively amend his 2017 case (which is at the summary-judgment stage) by bringing his FDCPA claims in this case. Thus, at a minimum, the FDCPA claims must be dismissed in this case on the basis of improper claim splitting.

***Third,*** the claims against Judge James are barred by the doctrine of absolute judicial immunity, which provides that a judge is immune from liability for all acts taken in his or her judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *see also Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts."). A judge "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]" *Stump*, 435 U.S. at 356. Immunity is not affected by a judge's motives in performing judicial acts, and will exist even if a judge's

actions are unfair or controversial. *Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 769 (3d Cir. 2000).

Mr. Strader alleges that Judge James granted summary judgment against him, despite various protestations that it was improper. He alleges that Judge James cut him off at the oral argument and did not recuse himself when he should have. However, as a judge for the Court of Common Pleas of Allegheny County, Judge James was well within his jurisdiction to rule upon a motion for summary judgment in a mortgage-foreclosure matter and to conduct the oral argument proceedings in a manner that he deemed appropriate. *See* 42 Pa. C. S. § 931(a) ("the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas."). Judge James was acting in his judicial capacity when he heard and ruled upon the summary-judgment motion (which is the totality of the conduct alleged against him), and so all claims against him are barred.

***Fourth,*** Mr. Strader fails to plead a claim under 42 U.S.C. § 1983 against any of the Defendants. To state a viable Section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

In this case, Mr. Strader can't maintain a Section 1983 claim against any of the non-state actor Defendants, such as Sandelands & Eyet, LLC, Matthew Eyet, Alina Eyet, William Sandelands, Shapiro & DeNardo, LLC, Gerald Shapiro, David Kreisman, Katherine Wolf, U.S. Bank, Nationstar, and Fay Janati. This is because a civil-rights claim under Section 1983 requires a state action. Such a claim is not viable against a private individual or entity, even if the private party

invoked state procedures. *See Brobst v. Brobst*, No. 16-4051, 2019 WL 1382513, at *3-4 (E.D. Pa. Mar. 27, 2019).

Further, with respect to the remaining state actors (Allegheny County and Sheriff Mullen and his office), the Section 1983 claim fails because Mr. Strader fails to allege sufficient facts to state a plausible claim.

To maintain a Section 1983 claim against a municipal entity, such as Allegheny County or the Sheriff's Office, a plaintiff "must demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality." *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (citation omitted). While Mr. Strader identifies a number of concerns he has regarding the handling of his mortgage-foreclosure proceedings, and argues that these amount to a deprivation of his constitutional right to due process, he does not adequately identify a cognizable policy or custom of Allegheny County or the Sheriff's Office that may have led to this alleged violation of his constitutional rights. *See Pondexter v. Allegheny Cty.*, No. 11-857, 2012 WL 628494, at *6 (W.D. Pa. Feb. 27, 2012) (Fischer, J.) ("In the case at bar, Plaintiff has not identified any policy or custom attributable to Allegheny County. . . . Plaintiff has also not set forth any evidence of incidents that have occurred in the past to prove some pattern of conduct that could establish a discriminatory custom or policy of Allegheny County directed at him. Thus, Plaintiff has failed to allege facts that could prove an essential element of his case under 42 U.S.C. § 1983. As his allegations are insufficient to state a claim upon which relief may be granted against Allegheny County, Plaintiff's Complaint against Allegheny County must be dismissed, with prejudice.") (cleaned up).

Further, any claim against Sheriff Mullen himself fails because supervisory "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *Evancho v.*

*Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (same). Instead, there must be some affirmative conduct by the supervisor that contributed to the alleged constitutional violation. *Id.* Here, the only allegations regarding Sheriff Mullen are that he employed deputy sheriffs who posted service of a handbill on the property and appeared as courtroom security at the summary-judgment argument. The complaint fails to identify any affirmative conduct by Sheriff Mullen himself. As such, there is no basis to hold him liable here.[1]

Accordingly, Mr. Strader has failed to plead a plausible Section 1983 claim against any Defendant in this action.

***Fifth,*** Mr. Strader fails to plead a claim of conspiracy under 42 U.S.C. § 1985. Section 1985 makes it unlawful for "two or more persons in any State or Territory [to] conspire" to (1) prevent officers from performing duties; (2) obstruct justice or intimidate a party, witness, or juror; or (3) deprive a person of the equal protection of the laws. 42 U.S.C. § 1985(1)-(3). While Mr. Strader does not identify the specific provision of Section 1985 under which he is suing, Section 1985(1) is inapplicable because it relates only to conspiracies to interfere with duties of federal officers, and Section 1985(2) is inapplicable because it relates to the intimidation of witnesses in a federal court action. *See Baron v. Carson*, 410 F. Supp. 299, 300-01 (N.D. Ill. 1976); *Rode*, 845 F.2d at 1206-07.

That leaves only 42 U.S.C. § 1985(3). To succeed under Section 1985(3), a "plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the

---

[1] Even if Sheriff Mullen engaged in affirmative conduct, the claim against him would still fail because there is no underlying constitutional violation. That is, the amended complaint does not allege any specific constitutional violations by Sheriff Mullen's subordinates. The allegations concern deputy sheriffs, who, as noted above, posted service of the handbill and served as courtroom security. As alleged, this conduct does not violate any aspect of the Constitution.

laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Rashid v. Pub. Sav. Ass'n, Inc.*, 97 B.R. 187, 190 n.6 (E.D. Pa. 1989) (citation and quotation omitted). Additionally, a well-established requirement of a Section 1985(3) claim is that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (citation and quotation omitted).

The complaint fails to establish any of these elements. There are no plausible factual allegations evincing a conspiracy of any kind, let alone one designed to deny Mr. Strader equal protection of law, or any privileges and immunities under the law. Beyond that, there are no facts pled to indicate that the foreclosure proceedings were instituted for any reason other than the fact that the mortgage payments were not being met. With respect to the events at oral argument in the state proceeding, Mr. Strader has not alleged facts to suggest that anyone involved in those proceedings discriminated against him based on race or, for that matter, any other protected classification. Thus, the Section 1985 conspiracy claim fails.

***Sixth,*** Mr. Strader's RICO claim fails for failure to plead any of its essential elements. The RICO statute authorizes civil suits by any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962, which renders unlawful various transactions and other dealings resulting from racketeering activity. *See* 18 U.S.C. § 1964(c). "Racketeering Activity" is defined to include numerous criminal acts such as murder, kidnapping, arson, bribery, mail fraud, interference with commerce, and extortion. *See* 18 U.S.C. § 1961(1).

Here, none of the alleged actions that were taken by any of the Defendants come close to this definition of "racketeering activity." The only alleged conduct that could arguably form the basis for a RICO claim are Mr. Strader's conclusory

allegations of mail, wire, and other forms of fraud.  *See* 18 U.S.C. § 1961(1).  These bare allegations, pled without any factual precision, are insufficient to plead the requisite "racketeering activity" since it is well-settled that where a plaintiff's RICO claim is predicated upon a crime of fraud, the fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b); *see also Brookhart v. Rohr,* 385 F. App'x. 67, 70 (3d Cir. 2010) ("Conclusory allegations of a pattern of racketeering activity, in this case, a fraudulent scheme, are insufficient to survive a Rule 12(b)(6) motion.") (citation omitted).  Because Mr. Strader has not alleged any facts that plausibly and particularly describe mail, wire, or other fraud, let alone tie that fraud to a plausibly pled racketeering scheme, this claim fails at the threshold.

***Seventh,*** Mr. Strader cannot state FDCPA claims against Judge James, Sheriff Mullen and his office, or Allegheny County, as none of them are "debt collectors."  The FDCPA, 15 U.S.C. § 1692 *et seq.*, was enacted to curb abuses by debt collectors.  *See Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987). The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statute also excludes from this definition any person "serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt[.]"  15 U.S.C. § 1692a(6)(D).

Here, the amended complaint does not allege that Judge James, Sheriff Mullen and his office, or Allegheny County's "principal purpose" in being involved in the foreclosure action was to collect a debt.  Rather, Mr. Strader alleges that Judge James was at all times acting in his judicial capacity and that Sheriff Mullen and his office were acting as courtroom security and effecting service of

process. Indeed, to the extent the Sheriff's Office was serving legal process, it is specifically excluded from the FDCPA's definition of a "debt collector." *See id.* Finally, there are no specific allegations against Allegheny County. Accordingly, all FDCPA claims against these Defendants fail as a matter of law.[2]

## CONCLUSION

Thus, for at least the seven reasons described above, Mr. Strader's amended complaint must be dismissed in its entirety. Further, this dismissal must be with prejudice—the Third Circuit has stated that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable *or* futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted) (emphasis added). Here, any further amendment would be both inequitable and futile. Mr. Strader has already had a chance to amend, and he has already raised similar claims against similar defendants in both his pending 2017 federal case and in state court.

Additionally, Mr. Strader has filed numerous documents with this Court, which have set forth, in exhaustive detail, the purported legal basis for his claims, both in this case and the 2017 case. *See, e.g.,* [ECF 20; ECF 68; ECF 71]; Case No. 17-cv-684, [ECF 70; ECF 72; ECF 86; ECF 87]. From a review of those filings, the Court concludes that further amendment of the complaint would not cure the deficiencies above. *See Adelman v. Jacobs*, No. 18-607, 2019 WL 1651612, at *6 (W.D. Pa. Apr. 17, 2019) (Fischer, J.) ("[T]he Court finds that any further amendment of these claims would be futile given the Court's analysis of the claims set forth above."); *Goldsmith v. Goldsmith*, No. 16-01362, 2017 WL 11471785, at *6 (W.D. Pa. Nov. 22, 2017) (Hornak, J.) ("[T]he Court concludes

---

[2] The FDCPA claims against all other Defendants are barred due to improper claim-splitting, as discussed above. Those claims will be addressed in the 2017 case.

that in light of the many 'do overs' that Plaintiff has been given, any amendment would be futile."). Accordingly, Mr. Strader's amended complaint will be dismissed with prejudice.

In sum, all of the claims in this case will be dismissed with prejudice. The only potentially viable claims are the FDCPA claims against Defendants Nationstar, Matthew Eyet, Alina Eyet, William Sandelands, and Sandelands Eyet, LLP. But those claims have been improperly split from the pending 2017 case, and so will be dismissed from this case.

## **ORDER**

AND NOW, this 24th day of June, 2020, the Court hereby **ORDERS** that Defendants' motions to dismiss [ECF 25; ECF 29; ECF 36; ECF 40; ECF 58; ECF 63] are **GRANTED**. Mr. Strader's amended complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall mark this case as **CLOSED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge